

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE  DIVISION**

| | |
|---|---|
| **J. RUIZ** § | |
| *Plaintiff,* § | |
| § | |
| v. § | **CIVIL ACTION NO.** |
| § | |
| **TENET HEALTHCARE** § | |
| **CORP.** § | |
| **AND** § | |
| **VHS VALLEY MANAGEMENT** § | |
| **COMPANY, INC., d/b/a** § | |
| **VALLEY BAPTIST MEDICAL** § | |
| **CENTER - BROWNSVILLE and** § | |
| **VALLEY BAPTIST HOSPITAL** § | |
| *Defendants.* § | **TRIAL BY JURY DEMANDED** |
| § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

J. RUIZ, (hereinafter "Plaintiff"), by and through her undersigned counsel complains of TENET HEALTHCARE CORPORATION and VHS VALLEY MANAGEMENT COMPANY, INC., d/b/a VALLEY BAPTIST MEDICAL CENTER - BROWNSVILLE and d/b/a VALLEY BAPTIST HOSPITAL (hereinafter "Defendants") and for cause of action would show the court as follows:

### <u>INTRODUCTION</u>

1. Plaintiff demands a jury trial in this case to any and all issues triable to a jury.

2. Plaintiff files this complaint about discrimination on the basis of disability under Title 1 of the Americans with Disabilities Act of 1990, as amended ("ADA" and "ADAAA") 42 U.S.C. § 12101 *et seq*.

3. This action seeks compensatory and punitive damages, plus lost wages (past, present, and future), attorney's fees, and damages for emotional distress, mental anguish, taxable court costs, pre-judgment and post judgment interest.

## PARTIES

4. Plaintiff, J. Ruiz is a resident of Texas.

5. Defendant, Tenet Healthcare Corporation, may be served by serving its registered agent, the Corporation Trust Company, at Corporation Trust Center 1209 Orange Street, Wilmington, New Castle, DE, 19801.

6. Defendant, VHS Valley Management Company, Inc., may be served by serving its registered agent, Judy Quisenberry, at 1267 North Stuart Place Road, Harlingen, Texas 78552.

## VENUE

7. Venue is appropriate in the United States District Court for the Southern District of Texas, as Defendants can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(c). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claims occurred here. *See* 28 U.S.C § 1391 (b)(2).

## JURISDICTION

8. This court has original jurisdiction over this action pursuant to 28 U.S.C § 1331 (Federal Question Jurisdiction) under the Americans with Disabilities Act of 1990, as amended, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act.

9. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

10. All conditions precedent to the filing of this action have been met by the Plaintiff in that she has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and has received a right to sue letter from the EEOC on August 17, 2023.

11. Plaintiff filed a charge of discrimination against Defendants with the EEOC on or about October 25, 2021.

12. The filing of this lawsuit has been accomplished within the ninety (90) days of Plaintiff's receipt of notice of Right to Sue Letter from the EEOC.

## FACTS

13. Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29, 2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

14. Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

15. Plaintiff was over 40 years of age when she was hired.

16. When Plaintiff was hired, she was diabetic and obese.

17. Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

18. In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department.

19. On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

20. Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

3

21. Plaintiff's request was denied by Sandy Laleta. Sandy Laleta told Plaintiff there was a hold on internal transfers for registered nurses.

22. Ivy Martinez, a female nurse under thirty years of age and without disabilities, who requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

23. In February 2020, Plaintiff was diagnosed with hypertension.

24. In February 2020, Plaintiff was admitted to the emergency room for a hypertension crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text message that she was unable to work because she was admitted to the hospital.

25. In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff that he would discharge her if she called in sick.

26. In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred to another department.

27. In June 2020, the entire Tower 3 unit where Plaintiff worked became a full COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another unit.

28. During the summer of 2020, Sandy Laleta promised Plaintiff a $200 bonus if she picked up extra shifts.

29. Plaintiff picked up three extra shifts, but no bonus was placed in her paycheck.

30. Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff began feeling fatigued on July 4, 2020, and began having difficulty breathing.

31. On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the COVID-19 unit. Plaintiff was not discharged from her hospitalization until after July 18, 2020.

32. Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's employment and demanded that human resources terminate Plaintiff.

33. Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse. Plaintiff filed for Workers Compensation.

34. In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta threatened Plaintiff with termination several times while under medical care at Defendants. Plaintiff filed a grievance against Sandy Laleta for harassment due to her medical condition and disability and for retaliation because she sought medical care.

35. In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the bonus.

36. Sandy Laleta harassed Plaintiff and other female nurses while Plaintiff was employed as a staff nurse with Defendants.

37. Sandy Laleta promised Plaintiff and other registered nurses a $3.50 an hour raise for hazard pay for working extra shifts and some of the regular shifts. Nurses were required to sign a book indicating that they were working the hazard shifts. However, Plaintiff was never compensated.

38. In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

39. On or about December 21, 2020, Plaintiff provided Defendants with medical paperwork showing that she would return to work as long as she was not required to lift more than fifteen pounds.

40. On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin Williams, telephoned Plaintiff and told her that Defendants was not going to be able to accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

41. Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

42. Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

43. On or about July 28, 2021, Plaintiff was terminated.

44. On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

## COUNT 1

### FAILURE TO ACCOMMODATE UNDER THE ADA/ADAAA

45. In order to establish a case for failure to accommodate, Plaintiff must show that, "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer

failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

46. Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29, 2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

47. Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

48. Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

49. When Plaintiff was hired, she was diabetic and obese.

50. On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

51. In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department.

52. Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

53. When Plaintiff's request was denied by Sandy Laleta. Sandy Laleta told Plaintiff there was a hold on internal transfers for registered nurses.

54. Ivy Martinez, a female nurse under thirty years of age and without disabilities, who requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

55. In February 2020, Plaintiff was diagnosed with hypertension.

56. In February 2020, Plaintiff was admitted to the emergency room for a hypertension crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text message that she was unable to work because she was admitted to the hospital.

57. In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff that he would discharge her if she called in sick.

58. In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred to another department.

59. In June 2020, the entire Tower 3 unit where Plaintiff worked became a full COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another unit.

60. Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff began feeling fatigued on July 4, 2020, and began having difficulty breathing.

61. Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse. Plaintiff filed for Workers Compensation.

62. On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the COVID-19 unit. Plaintiff was not discharged from her hospitalization until after July 18, 2020.

63. Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's employment and demanded that human resources terminate Plaintiff.

64. In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta threatened Plaintiff with termination several times while under medical care at

8

Defendants. Plaintiff filed a grievance against Sandy Laleta for harassment due to her medical condition and disability and for retaliation because she sought medical care.

65. In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

66. On or about December 21, 2020, Plaintiff provided Defendants with medical paperwork showing that she would return to work as long as she was not required to lift more than fifteen pounds.

67. On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin Williams, telephoned Plaintiff and told her that Defendants was not going to be able to accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

68. Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

69. Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

70. On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

71. Plaintiff is a qualified individual with a disability because her hypertension, obesity, and diabetes substantially limits one or more major life activities.

72. Plaintiff's record of hypertension, obesity, and diabetes was known by Defendants, including Plaintiff's direct supervisor Sandy Laleta, because Plaintiff submitted complete medical documentation regarding those disabilities.

73. Defendants failed to make reasonable accommodations by denying Plaintiff's transfer to a different department and by preventing Plaintiff from returning to work with a reasonable accommodation.

## COUNT 2

### DISPARATE TREATMENT UNDER THE ADA/ADAAA

74. To establish a prima facie case of disparate treatment due to disability, Plaintiff must show that: "(1) she is disabled; (2) she was nonetheless qualified to do the job; (3) an adverse employment action was taken against her; and (4) she was replaced by or treated less favorably than non-disabled employees." *Mzyk v. North East Indep. Sch. Dist.*, 397 Fed. Appx. 13, 15 (5th Cir. 2010); *see Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *see also McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

75. Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29,  2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

76. Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

77. When Plaintiff was hired, she was diabetic and obese.

78. Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

79. On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

80. In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department.

81. Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

82. When Plaintiff's request was denied by Sandy Laleta, he told Plaintiff there was a hold on internal transfers for registered nurses.

83. Ivy Martinez, a female nurse under thirty years of age and without disabilities, who requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

84. In February 2020, Plaintiff was diagnosed with hypertension.

85. In February 2020, Plaintiff was admitted to the emergency room for a hypertension crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text message that she was unable to work because she was admitted to the hospital.

86. In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff that he would terminate her employment if she called in sick.

87. Sandy Laleta allowed employees without disabilities to call in sick without threatening them with termination.

88. In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred to another department.

89. In June 2020, the entire Tower 3 unit where Plaintiff worked became a full COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another unit even though Ivy Martinez, a female nurse under thirty years of age and without disabilities had been allowed to transfer.

90. Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff began feeling fatigued on July 4, 2020, and began having difficulty breathing.

91. Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse.

92. On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the COVID-19 unit.

93. Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's employment and demanded that human resources terminate Plaintiff.

94. In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta threatened Plaintiff with termination several times.

95. Plaintiff was not discharged from her hospitalization until after July 18, 2020.  Plaintiff filed for Workers Compensation.  Plaintiff filed a grievance against Sandy Laleta for harassment due to her medical condition and disability and for retaliation because she sought medical care.

96. In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the bonus.

97. In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

98. On or about December 21, 2020, Plaintiff provided Defendants with medical paperwork showing that she would return to work as long as she was not required to lift more than fifteen pounds.

99. On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin Williams, telephoned Plaintiff and told her that Defendants was not going to be able to accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

100.    Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

101.    On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

102.    Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

103.    Plaintiff was treated less favorably than her non-disabled co-workers.


**COUNT 3**

**HOSTILE WORK ENVIRONMENT UNDER THE ADA/ADAAA**

104.    To establish a prima facie case for hostile work environment, the Plaintiff must show, "(1) he is a member of a protected group; (2) he was subjected to harassment; (3) that the complained of harassment was based solely on his disability; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or

should have known of the harassment and failed to take prompt, remedial action." *Travis v. Potter*, 221 F. App'x 345, 348 (5th Cir. 2007), (*quoting Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir. 2002)).

105.    Plaintiff,  J. Ruiz was hired by Defendants in Brownsville, Texas on April 29,  2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

106.    When Plaintiff was hired, she was diabetic and obese.

107.    Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

108.    On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

109.    Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

110.    Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

111.    In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department. When Plaintiff's request was denied by Sandy Laleta, he told Plaintiff there was a hold on internal transfers for registered nurses.

112.    Ivy Martinez, a female nurse under thirty years of age and without disabilities, whom requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

113.    In February 2020, Plaintiff was diagnosed with hypertension.

114.    In February 2020, Plaintiff was admitted to the emergency room for a hypertension

crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text

message that she was unable to work because she was admitted to the hospital.

115.    In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff

that he would discharge her if she called in sick.

116.    In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned

became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred

to another department.

117.    In June 2020, the entire Tower 3 unit where Plaintiff worked became a full

COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another

unit.

118.    During the summer of 2020, Sandy Laleta promised Plaintiff a $200 bonus if she

picked up extra shifts.

119.    Plaintiff picked up three extra shifts, but no bonus was placed in her paycheck.

120.    Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff

began feeling fatigued on July 4, 2020, and began having difficulty breathing.

121.    On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the

COVID-19 unit. Plaintiff was not discharged from her hospitalization until after July 18,

2020.

122.    Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via

ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's

employment and demanded that human resources terminate Plaintiff.

123.    Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse. Plaintiff filed for Workers Compensation.

124.    In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta threatened Plaintiff with termination several times while under medical care at Defendants. Plaintiff filed a grievance against Sandy Laleta for harassment due to her medical condition and disability and for retaliation because she sought medical care.

125.    In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the bonus.

126.    In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

127.    On or about December 21, 2020, Plaintiff provided Defendants with medical paperwork showing that she would return to work as long as she was not required to lift more than fifteen pounds.

128.    On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin Williams, telephoned Plaintiff and told her that Defendants was not going to be able to accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

129.    Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

130.    Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

131.    On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

132.    Plaintiff is disabled and is a member of a protected group, those with a qualified disability as defined under the federal ADA and ADAAA statute.

133.    Plaintiff was subjected to harassment by Sandy Laleta when she was hospitalized for severe and emergent medical conditions. Sandy Laleta threatened Plaintiff with termination several times while she was absent in order to receive medical care.

134.    Sandy Laleta harassed Plaintiff because she was disabled and called out sick several times due to severe and emergent medical conditions. Sandy Laleta did not threaten other non-disabled employees with termination for calling off work.

135.    Defendants knew or should have known of the harassment by Sandy Laleta because Plaintiff filed a formal written grievance with human resources outlining the severe and pervasive harassment and disparate treatment of Plaintiff. Even though Defendants knew or should have known of the harassment that created the hostile work environment, it failed to take any remedial action and instead did nothing to address Plaintiff's complaints.

136.    On or about July 28, 2021, Plaintiff was terminated by Defendants.

**COUNT 4**

**DISCRIMINATION AND TERMINATION BASED ON DISABILITY UNDER THE ADA/ADAAA**

137.    The Fifth Circuit requires that a prima facie case of disability discrimination shows three elements: "(1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810-811 (5th Cir. 2016) (*quoting Cannon v. Jacobs Field Servs. N.S., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)). Plaintiff was fully qualified for the job, had a record of disability and was fired by Defendants.

138.    Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29, 2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

139.    Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

140.    Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

141.    When Plaintiff was hired, she was diabetic and obese.

142.    In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department.

143.    On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

144.    Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

145.    Plaintiff's request was denied by Sandy Laleta. Sandy Laleta told Plaintiff there was a hold on internal transfers for registered nurses.

146.    Ivy Martinez, a female nurse under thirty years of age and without disabilities, who requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

147.    Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff began feeling fatigued on July 4, 2020, and began having difficulty breathing.

148.    On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the COVID-19 unit. Plaintiff was not discharged from her hospitalization until after July 18, 2020.

149.    In February 2020, Plaintiff was diagnosed with hypertension.

150.    In February 2020, Plaintiff was admitted to the emergency room for a hypertension crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text message that she was unable to work because she was admitted to the hospital.

151.    In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff that he would discharge her if she called in sick.

152.    In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred to another department.

153.    In June 2020, the entire Tower 3 unit where Plaintiff worked became a full COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another unit.

154.    Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's employment and demanded that human resources terminate Plaintiff.

155.    Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse. Plaintiff

filed for Workers Compensation.

156.    In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta

threatened Plaintiff with termination several times while under medical care at

Defendants. Plaintiff filed a grievance against Sandy Laleta for harassment due to her

medical condition and disability and for retaliation because she sought medical care.

157.    In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she

worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the

bonus.

158.    In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the

suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

159.    On or about December 21, 2020, Plaintiff provided Defendants with medical

paperwork showing that she would return to work as long as she was not required to lift

more than fifteen pounds.

160.    On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin

Williams, telephoned Plaintiff and told her that Defendants was not going to be able to

accommodate her and that she would need to remain out until she received clearance to

return to full duty, with no restrictions.

161.    Ms. Williams informed Plaintiff that she would need to obtain two physicians

clearance notices, one regarding "COVID condition" stating that she is cleared to return

to full duty; and one regarding her abdominal surgery also stating that she was cleared to

return to full duty.

162.   Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

163.   On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

164.   Plaintiff has a disability as she was diagnosed with hypertension, is diabetic and obese.

165.   Plaintiff was qualified for the job as she worked for Defendants as a full-time registered floor nurse for several years.

166.   Plaintiff requested several medical accommodations in February 2020 for light weight work, on December 12, 2020 to lift less than 15 pounds at a time, and to return back to work, however Defendants denied all reasonable requests for accommodations and failed to participate in the interactive process and refused to allow Plaintiff to return to work in 2021 because she was disabled or regarded as disabled by Defendants.

167.   Plaintiff was subject to an adverse employment action because of her disability when Defendants discharged her on July 28, 2021.

## COUNT 5

### CONSTRUCTIVE DISCHARGE

168.   To establish a prima facie case for constructive discharge, a plaintiff must, "offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

169.    Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29,  2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

170.    Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

171.    Plaintiff was over 40 years of age when she was hired.

172.    When Plaintiff was hired, she was diabetic and obese.

173.    Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

174.    In October 2019, Plaintiff asked Sandy Laleta if she could transfer to a different department.

175.    On October 25, 2019, Plaintiff's medical doctor wrote a letter to the Defendants listing Plaintiff's medical conditions, disabilities, and current symptoms.

176.    Defendants, including Sandy Laleta, knew of and were aware of Plaintiff's disability and medical conditions, but denied Plaintiff's request for transfer.

177.    Plaintiff's request was denied by Sandy Laleta. Sandy Laleta told Plaintiff there was a hold on internal transfers for registered nurses.

178.    Ivy Martinez, a female nurse under thirty years of age and without disabilities, who requested a transfer to another department on the same day that Plaintiff made her request was granted a transfer by Sandy Laleta.

179.    In February 2020, Plaintiff was diagnosed with hypertension.

180.    In February 2020, Plaintiff was admitted to the emergency room for a hypertension crisis. She notified Sandy Laleta while in the hospital on February 7, 2020 via text message that she was unable to work because she was admitted to the hospital.

181.    In response to her February 7, 2020 text message, Sandy Laleta sent a text to Plaintiff that he would discharge her if she called in sick.

182.    In March 2020, the section of Defendants' Tower 3 unit, where Plaintiff was assigned became a COVID-19 unit, but Plaintiff was not granted an opportunity to be transferred to another department.

183.    In June 2020, the entire Tower 3 unit where Plaintiff worked became a full COVID-19 unit. Again, Plaintiff was not offered an opportunity to transfer to another unit.

184.    During the summer of 2020, Sandy Laleta promised Plaintiff a $200 bonus if she picked up extra shifts.

185.    Plaintiff picked up three extra shifts, but no bonus was placed in her paycheck.

186.    Plaintiff worked the Tower 3 unit from July 3, 2020 through July 7, 2020. Plaintiff began feeling fatigued on July 4, 2020, and began having difficulty breathing.

187.    On July 12, 2020, Plaintiff was taken to the emergency room, and hospitalized in the COVID-19 unit. Plaintiff was not discharged from her hospitalization until after July 18, 2020.

188.    Plaintiff called in sick on July 12, 2020 because she was admitted to the hospital via ambulance due to COVID-19. Sandy Laleta once again threatened to terminate Plaintiff's employment and demanded that human resources terminate Plaintiff.

189.    Plaintiff contracted COVID-19 in July 2020 while working as a staff nurse. Plaintiff

filed for Workers Compensation.

190.    In July 2020, while Plaintiff was a patient being treated for COVID-19, Sandy Laleta

threatened Plaintiff with termination several times while under medical care at

Defendants. Plaintiff filed a grievance against Sandy Laleta for harassment due to her

medical condition and disability and for retaliation because she sought medical care.

191.    In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she

worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the

bonus.

192.    Sandy Laleta harassed Plaintiff and other female nurses while Plaintiff was employed

as a staff nurse with Defendants.

193.    Sandy Laleta promised Plaintiff and other registered nurses a $3.50 an hour raise for

hazard pay for working extra shifts and some of the regular shifts. Nurses were required

to sign a book indicating that they were working the hazard shifts. However, Plaintiff was

never compensated.

194.    In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the

suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

195.    On or about December 21, 2020, Plaintiff provided Defendants with medical

paperwork showing that she would return to work as long as she was not required to lift

more than fifteen pounds.

196.    On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin

Williams, telephoned Plaintiff and told her that Defendants was not going to be able to

accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

197.    Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

198.    Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

199.    On or about July 28, 2021, Plaintiff was terminated.

200.    On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

201.    Defendants failed to do medical screening to ensure that the employees who were working in the COVID-19 unit were medically cleared to do so.

202.    Defendants knew of Plaintiff's disabilities, medical conditions, and limitations but pressured her to return to work while she was hospitalized and while she was seeking medical care.

203.    Defendants denied several of Plaintiff's requests for reasonable accommodation.

204.    Defendants' conduct caused Plaintiff to contract COVID-19 while working for Defendants.

205.    Even if the Plaintiff was not discharged, Defendants made the working conditions for Plaintiff so intolerable that a reasonable person would have felt compelled to resign.

## COUNT 6

## BREACH OF CONTRACT

206.    Plaintiff requests that this court exercise pendent jurisdiction over this state law count for breach of contract.

207.    To prove breach of contract, the plaintiff must show that there is a valid contract, the Plaintiff performed, and the Defendant breached the terms of the contract which resulted in damages.

208.    Plaintiff, J. Ruiz was hired by Defendants in Brownsville, Texas on April 29, 2019 as a full-time registered floor nurse. Plaintiff was assigned to work the night shift on the Tower 3 unit, medical surgical floor.

209.    Sandy Laleta was the Director of nursing for Tower 3 and was Plaintiff's immediate supervisor while she was employed by Defendants.

210.    Sometime after she was hired, the medical surgical unit where Plaintiff was assigned stopped being a medical surgical unit.

211.    In October 2020, Sandy Laleta promised to provide Plaintiff a $250 bonus if she worked on Saturday, October, 19, 2020. Plaintiff worked that day, but did not receive the bonus.

212.    Sandy Laleta promised Plaintiff and other registered nurses a $3.50 an hour raise for hazard pay for working extra shifts and some of the regular shifts. Plaintiff signed the book indicating that she would work the hazard pay shifts and worked the shifts for which hazard pay was to be awarded.  Nurses were required to sign a book indicating that they were working the hazard shifts. However, Plaintiff was never compensated.

213.    In December 2020, Plaintiff had abdominal surgery. Thereafter, based on the suggestion of Plaintiff's pulmonary doctor, Plaintiff asked for an accommodation.

214.    Plaintiff used her PTO to have abdominal surgery in December 2020, but Defendant did not pay Plaintiff her PTO.

215.    On or about December 21, 2020, Plaintiff provided Defendants with medical paperwork showing that she would return to work as long as she was not required to lift more than fifteen pounds.

216.    On or about December 23, 2020, Defendants' Leave of Absence Administrator, Erin Williams, telephoned Plaintiff and told her that Defendants was not going to be able to accommodate her and that she would need to remain out until she received clearance to return to full duty, with no restrictions.

217.    Ms. Williams informed Plaintiff that she would need to obtain two physicians clearance notices, one regarding "COVID condition" stating that she is cleared to return to full duty; and one regarding her abdominal surgery also stating that she was cleared to return to full duty.

218.    Throughout her employment with Defendants, Plaintiff was able to perform the essential functions of her job as a Registered Nurse.

219.    On or about July 28, 2021, Plaintiff was terminated.

220.    On August 11, 2021, Plaintiff was at a doctor's appointment when she discovered that her health insurance had been terminated on July 28, 2021.

## DAMAGES

221.    As a direct and proximate result of the aforementioned acts and omissions, Plaintiff has suffered loss of wages, both in the past, present, and future, lost benefits, and she is also seeking punitive and compensatory damages, including but not limited to emotional distress.

## EXEMPLARY DAMAGES

222.    Defendants' actions were intentional, willful, harsh, oppressive, reckless and

malicious and as a further and proximate cause, Plaintiff has suffered emotional distress,

pain and suffering, and the wrongs done by Defendants were aggravated by its

willfulness, wantonness, and maliciousness for which the law allows the imposition of

exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be

determined by the trier of fact to serve as punishment to deter Defendants from such

conduct in similar situations.

## ATTORNEY'S FEES

223.    Defendants' conduct, as described herein, and the resulting damage and loss to

Plaintiff has caused Plaintiff to retain the services of COANE AND ASSOCIATES,

PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and

necessary attorney's fees.

## PRAYER

224.    WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully prays that

Defendants be cited to appear and answer, and that on final hearing of this case, Plaintiff

have the following relief.

    a.   Back Pay;

    b.   Pre-judgment Interest on Back Pay;

    c.   Front Pay;

    d.   Lost Benefits

    e.   Compensatory Damages, including but not limited to emotional distress;

    f.   Punitive Damages;

g.  Injunctive and Affirmative Relief;

h.  Reinstatement;

i.  Attorney's Fees and Costs;

j.  Post-Judgment Interest; and

k.  Such other and further relief, at law or equity, general or special, to which
Plaintiff may show she is justly entitled.

225.  Plaintiff requests damages and reasonable attorney's fees from Defendants pursuant
to 41 U.S.C § 2000e, et seq., 42 U.S.C § 12101, et seq., and any other applicable
authority (statute/law/etc.) to be proven at the time of trial for all compensatory damages,
exemplary damages, and attorney's fees and costs along with any other relief that this
Court finds reasonable under the circumstances.

## <u>JURY TRIAL DEMANDED</u>

226.  Plaintiff demands a trial by jury for all issues so triable.

Dated: November 8, 2023

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**

/**s**/ _Bruce A. Coane_____
**Bruce A. Coane**
Texas Bar No.: 04423600
S.D. TX No.: 7205
bruce.coane@gmail.com
**Donald Tyler**
Florida Bar No.: 562998
Donald.tyler@coane.com
**Cierra Moormann**
Texas Bar No.: 24138156
cierra.moormann@coane.com
COANE AND ASSOCIATES, PLLC

29

5177 Richmond Ave. Suite 770
Houston, TX 77056
Telephone: 713-850-0066
Fax: 832-558-1780

***ATTORNEYS FOR PLAINTIFF***